IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| NORTH DAKOTA HUMAN RIGHTS COALITION, IMMIGRANT DEVELOPMENT CENTER, and PLAINTIFF DOE | § § § § | Civil Action No. 3:23-cv-00160-PDW-ARS |
| Plaintiffs, | § § | |
| v. | § § § | |
| PATRIOT FRONT, THOMAS ROUSSEAU, TREVOR VALESCU, and JOHN DOES 1 – 10 | § § § § | |
| Defendants. | § | |

**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendants, Thomas Rousseau and Trevor Valescu (collectively referred to herein as "Defendants"), by counsel, respectfully submit this reply to Plaintiffs' memorandum in opposition to Defendants' motion to dismiss Plaintiffs' Complaint (the "Complaint") under Fed. R. Civ. P. 12(b)(6). As grounds therefore, Defendants state as follows:

**INTRODUCTION**

Plaintiffs spend the first four pages of their memorandum of law doing precisely the same thing that they did in their complaint: portraying Defendants as persons with rights unworthy of protection by this Court. They repeatedly state throughout their response that Defendants have failed to specifically deny certain aspects of their case.

1

As they are undoubtedly aware, the denial of even the most absurd allegations contained in the Complaint would be futile at this juncture because, for the purpose of determining Defendants' motion, the Court must accept the facts alleged in the Complaint as true. Defendants decline Plaintiffs' invitation to respond to their political hyperbole and name-calling because, even if it were true, the vast majority of the claims plead against Defendants *still* fail.

## ARGUMENT

### A.  The Coalition Lacks Organizational Standing Under *Havens*

Plaintiffs correctly note that organizational standing may be found when there is a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests. *Nat'l Fed'n of Blind of Missouri v. Cross*, 184 F.3d 973, 979 (8th Cir. 1999) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). *Havens* concerned an apartment complex that was sued by an organization that provided housing counseling services in the area and investigated housing discrimination. 455 U.S. at 368. However, the [*Havens*] Court did not base standing on the diversion of resources from one program to another, but rather on the alleged injury that the defendants' actions themselves had inflicted upon the organization's programs. To be sure, the Court did mention the "drain on the organization's resources." Yet this drain apparently sprang from the organization's need to "counteract" the defendants' assuredly illegal practices, and thus was simply another manifestation of the injury that those practices had inflicted. *Fair Employment Council of Greater Washington Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994).

In this case, the only source of damages alleged by the Coalition are expenditures that occurred after the alleged acts of vandalism which were expended by the Coalition on its own volition. In *Equal Rights Ctr. v. Post Props.*, the court held that an organizational plaintiff cannot establish the injury necessary for constitutional standing when it consists merely of the impact on its activities caused by their willful diversion of resources in response to the defendant's conduct. 657 F. Supp. 2d 197, 200 (D. D.C. 2009). The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization. *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir.1995). This is exactly what the Coalition alleges to have occurred in this case, and accordingly, it lacks standing. See Pls.' Compl. ¶ 20.

**B. IDC's tortious interference with contract theory of recovery, as well as Plaintiff Doe's tortious interference with prospective relations theory of recovery, fail as a matter of law under 42 U.S.C. § 1981.**

First and foremost, it should be noted that although the Complaint states that Plaintiffs' claims under § 1981 are brought against "all defendants". However, it only alleges "Defendant John Does 1 – 4 acted with discriminatory intent in targeting individual Plaintiffs, all of whom are members of a protected class . . . " It makes no allegations with respect to Rousseau or Valescu which, on its own, is fatal to Plaintiffs' § 1981 claim against them. However, even if Plaintiffs were to amend this defect, both their complaint and their response to Defendants' motion to dismiss shows that their § 1981 claim involves two parts: (a) the "impaired" contractual relationship between IDC and the International Market Plaza and/or its shopkeepers; and (b) prospective future

contractual relationships between Plaintiff Doe, the International Market Plaza, and its shopkeeper. Both of these theories of recovery fail.

With respect to IDC's tortious interference theory of recovery, the Eight Circuit held on *Spirit Lake Tribe of Indians v. Nat'l Collegiate Athletic Ass'n*, that such a § 1981 claim brought on a tortious interference theory requires a plaintiff to plausibly plead and prove all of the elements of tortious interference. 715 F.3d 1089, 1093 (8th Cir. 2013). To establish a facial case for tortious interference, a claimant must show a *breach* of a contract instigated without justification by the defendant. *Hennum v. City of Medina*, 402 N.W.2d 327, 336 (N.D. 1987) (emphasis added). Additionally, in instigating a breach, IDC has failed to plead that these Defendants acted with the requisite intent required for tortious interference. The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. Inquiry into the motive or purpose of the actor is necessary. *Hennum*, 402 N.W.2d at 338 (quoting *DeVoto v. Pacific Fidelity Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980). Thus, Plaintiffs must plausibly plead that these Defendants vandalized IDC's property with the *specific intent* that the shopkeepers and other small businesses utilizing the International Market Plaza breach their contracts with IDC, or at least with "with knowledge that such a breach would be a necessary consequence of [their] action[s]." *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D. 1991). IDC has not and cannot plausibly plead this theory of recovery.

It should further be noted that federal circuit courts have typically only allow § 1981 claims based upon a theory of tortious interference to proceed under fairly narrow

4

circumstances. Specifically, § 1981 claims based upon tortious interference have typically only been allowed when a defendant "both possessed sufficient authority to significantly interfere with the [plaintiff's] ability to obtain contracts with third parties, and that the [defendant] actually exercised that authority to the [plaintiff's] detriment." *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1197 (10th Cir. 2002). This allowance is inapplicable here. There has never been a § 1981 case based upon graffiti or other vandalism (racially motivated or otherwise). The Defendants in this case did not possess, and are not alleged to have possessed, any authority or ability to interfere with IDC's contracts with the International Market Plaza or its shopkeepers.

Perhaps the most analogous case to this can be found in *Painter's Mill Grille, LLC v. Brown*, where the plaintiff sued two of the lawyers representing its landlord for allegedly telling prospective buyers of plaintiff's business "that they did not want another 'chicken and waffle shack' at the site and made racially derogatory comments about the restaurant and its customers. 716 F.3d 342, 350 (4th Cir. 2013). The Fourth Circuit held that such comments, even if they resulted in the prospective buyers breaching their written contract for the purchase of the business, were insufficient to state a claim under § 1981. *Id*. at 351. Defendants deny any involvement in the *defacing* of IDC's business. However, even if they were responsible, such acts would be most analogous to *defaming* IDC's business – which is legally insufficient to maintain a claim under § 1981.

5

Plaintiff Doe's claims under § 1981 are even weaker.  First and foremost, she has referenced only alleged impairment with her ability to potentially contract with the market's vendors in this future (presumably from the fear supposedly created by the vandalism). This is insufficient to show tortious interference or a violation of § 1981. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413-15 (7th Cir. 1996) (holding that interference with "prospective contractual relations" was insufficient to state a claim under § 1982, which is "construed in tandem" with § 1981); *Arguello* v. *Conoco*, *Inc.,* 330 F.3d 355, 358-59 (5th Cir. 2003) ("a § 1981 claim must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase or receiving a service after attempting to do so); *Bagley v. Ameritech Corp.,* 220 F.3d 518 (7th Cir. 2000) (there is no claim under § 1981 when a shopper opts not to contract with a merchant because the shopper is offended by racially motivated activity by an employee of the store). Plaintiff Doe's ability to contract was not "blocked": she made a willful decision to avoid the International Market Plaza. That decision does not give her a plausible claim under § 1981.

**C.    Plaintiffs' claims under 42 U.S.C. § 1985(3) and 1986 fail, in part, because their claims under § 1981 fail.**

In their response to Defendants' motion, IDC and Plaintiff Doe seek to use their claims under 42 U.S.C. § 1981 as a legal and factual basis for pleading a claim under §§ 1985(3) and 1986. ECF 24, p. 14. Defendants will not belabor the point of why this is impermissible here: Plaintiffs' claims under § 1981 fail for the reasons stated above. If their underlying claims under § 1981 fail as a matter of law, they cannot be used as a

basis for which to plead additional claims against Defendants under §§ 1985(3) and 1986.

D. **The spray-painting of graffiti – racially-motivated or otherwise – on a place of public accommodation is not a "badge or incident of slavery"; the Court should refuse Plaintiffs' invitation to expand the scope of the KKK Act.**

Defendants invite this Court to ignore the clear mandate of the U.S. Supreme Court in *Bray v. Alexandria Women's Health Clinic* so as to allow themselves to establish, by legal precedent in this Court and others, that the Ku Klux Klan Act creates the kind of hate speech exception to the First Amendment that the Supreme Court, as well as numerous other courts, have long rejected. 506 U.S. 263, 278 (1993). They believe that they will be able to do so in this case by specifically attacking the "patriotfront.us" URL – a link to a website which undisputedly consists of First Amendment protected speech – which was affixed to real property owned by IDC in an unlawful manner.

Plaintiffs base their argument on the following pre-Bray cases: (1) *Fisher v. Shamburg*, 624 F.3d 156 (10th Cir. 1980); and (2) *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975). *Fisher v. Shamburg* established a right under the Thirteenth Amendment right to be free from racial *violence.* 624 F.2d at 158 (holding ""a racially motivated conspiracy to assault provides the required discriminatory animus"). It should further be noted that *Lowden v. William M. Mercer, Inc.*, also cited by Plaintiffs, does not expound further. 903 F. Supp. 212 (D. Mass 1995). The Court in *Lowden* merely cited *Shamburg* in holding that § 1985(3) creates a remedy for racially motivated conspiracies which, for example, interfere with a minority person's right to public accommodation. *Id.* at 221.

7

*Shamburg* is distinguishable from Plaintiff's case for an important reason: it involved three white men repeatedly hurling racial slurs at a black man, confronting him, and then physically assaulting him. *Id*. at 157. A confrontation and violent physical assault of this nature is a far-cry from the lack of confrontation in this case coupled with the commission of an unlawful, yet entirely non-violent, act. The Plaintiffs in this case cannot even claim that any defendant in this case painted a racial slur or threat of physical violence on IDC's property: the allegation is that they spray-painted a link to a website. Defendants subsequently accessed that website and discovered material that was non-threatening, but which offended their sensibilities.

*Means* arose from a dispute in South Dakota where members of a Native American tribe sued one another over the results of a disputed election. 522 F.2d at 836. The case was brought based upon an alleged deprivation of the right to vote and held that interference in the right to vote in a tribal election may be vindicated under 42 U.S.C. § 1983(3). *Id*. at 838 – 839. It involved membership in a class of voters for one candidate over another (not a racial group) and was based in part on a withdrawn opinion from the Fifth Circuit. *Id*. at 840. In that case, the Eighth Circuit allowed a case to continue that was based solely on the assertion that "[Defendant] conspired with private individuals to ensure his reelection by illegal means, and in furtherance of this conspiracy a private, unauthorized police force known as the 'Goon Squad', was maintained by Wilson which harassed and threatened those who opposed the Wilson administration. *Id*. at 840 – 841. Once again, the facts alleged in *Means* are a far cry from those alleged in the case at bar: while *Means* allegedly involved a private paramilitary

8

force utilizing true threats as well as harassment to interfere with tribal voting rights, this case involved the spray-painting of a non-threatening message over an art mural.

The common theme *Shamburg* and *Means* is a confrontation or altercation specifically aimed at violently depriving a person of their rights under the Thirteenth Amendment and interstate right to travel. No court has ever held that the spray-painting of graffiti, or for that matter, the placement of stickers of banners, is activity implicating the "badges and incidents of slavery" that § 1985(3) was intended to guard against. While Defendants do not deny that the International Market Plaza is a place of public accommodation, no court has ever held that the placement of graffiti (expressing racial animus or otherwise) constitutes an act sufficient to deprive persons of their right to enjoy a place of public accommodation. This Court should refuse Plaintiffs' invitation to aggressively expand the scope of the Ku Klux Klan Act to such a degree that any potential act (lawful or otherwise) expressing racial animus at or near any place of public accommodation gives rise to a potential claim under § 1985(3).

## CONCLUSION AND PRAYER

The Coalition lacks standing entirely because their only basis for standing is their own willful diversion of resources in response to the defendant's conduct. *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434. IDC's claims under § 1981, which it uses as the basis for its claims under § 1985(3) and 1986, fail because they have failed to plausibly plead that these Defendants acted with the specific intent that the International Market Plaza and its shopkeepers breach their contracts with IDC. *Spirit Lake Tribe of Indians*, 715 F.3d at 1093; *Zerr*, 477 N.W.2d at 234. Further, IDC has failed to plausibly plead that

9

Defendants both possessed sufficient authority to significantly interfere with its ability to obtain contracts with third parties. *Harris,* 300 F.3d at 1197. Plaintiff Doe's claim under § 1981 for tortious interference with prospective relations is factually and legally insufficient to state a claim. *Morris*, 89 F.3d at 413-15. Her willful decision to avoid the International Market Plaza does not give her a plausible claim under § 1981. *Arguello*, 330 F.3d at 358-59; *Bagley,* 220 F.3d at 518.

Plaintiffs' claims under §§ 1985 and 1985 also fail. They cannot maintain such a claim with their untenable § 1981 claims, and their notion that the placement of graffiti is akin to violent assaults and confrontations is something that no court has ever sustained. The placement of graffiti (expressing racial animus or otherwise) does not constitutes an act sufficient to deprive persons of their right to enjoy a place of public accommodation and this Court should refuse Plaintiffs' invitation to expand the jurisdiction of federal courts to encompass acts of petty vandalism. Defendants' motion to dismiss should be granted.

    Respectfully submitted,

    **MAGANA & VAN DYKE, PLLC**

    <u>/s/ Jason Lee Van Dyke</u>
    Jason Lee Van Dyke
    State Bar No. 24057426
    1417 E. McKinney Street, #110
    Denton, TX 76209
    P – (940) 382-1976
    F – (469) 453-3031
    Email:  jason@maganavandyke.com

    Attorney for Thomas Rousseau and Trevor Valescu

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, a true and accurate copy of the foregoing were served via ECF procedures of this Court to all counsel of record.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE
