IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| North Dakota Human Rights Coalition, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | **ORDER** |
| vs. | ) ) ) | Case No. 3:23-cv-160 |
| Patriot Front, et al., | ) ) ) | |
| Defendants. | ) | |

Defendants Thomas Rousseau and Trevor Valescu move to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of standing. Doc. 18; Doc. 21. Plaintiffs North Dakota Human Rights Coalition (the "Coalition"), Immigrant Development Center ("IDC"), and Plaintiff Doe oppose the motion. Doc. 24. As explained below, the motion to dismiss is granted in part and denied in part.

I.      FACTUAL BACKGROUND

Downtown Fargo is home to the International Market Plaza (the "Market"). Doc. 1. In the Market, there are shops, restaurants, grocery stores, and an after-school program, all designed to support immigrant entrepreneurs. Id. The IDC, a nonprofit organization, is the landlord of the Market, and Plaintiff Doe is the Executive Director of the IDC. Id. The Coalition is another nonprofit organization that advocates for human rights. Id.

This case involves the vandalism of the Market in September 2022. Doc. 1 at 1-3. As alleged, individuals affiliated with Patriot Front, which is alleged to be a "white supremacist group," trespassed onto the Market and spray-painted Patriot Front designs across the front of the Market's building. Id. at 1-2. A few days later, Patriot Front members also vandalized the Market's street-facing wall. Id. at 3. Along with suing the Patriot Front, the Plaintiffs also sued the

unidentified members of the Patriot Front who vandalized and conspired to vandalize the Market (John Does 1-10), Thomas Rousseau, who is alleged to be the National Director of the Patriot Front, and Trevor Valescu, who is alleged to be a member of the Patriot Front and the Network Director of the organization's Network 11, which supervises activities in North Dakota. Id.

The Plaintiffs allege the vandalism is part of a broader pattern of discriminatory and racist conduct and is part of the Patriot Front's nationwide campaign to promote their white supremacist agenda. Id. at 2-3. Because of the vandalism, the Plaintiffs allege they became concerned for their physical safety and felt threatened. Id. at 4. They also claim that employees and customers curtailed or eliminated their use of the Market after the vandalism. Id. at 4.

The Plaintiffs allege a mix of federal and state law claims. For the federal claims, they allege conspiracy to violate civil rights under 42 U.S.C. § 1985(3), action for neglect to prevent interference with civil rights under 42 U.S.C. § 1986, and action to make and enforce contracts under 42 U.S.C. § 1986. For the North Dakota state law claims, they allege conversion, trespass, trespass to chattel, and civil conspiracy. Rousseau and Valescu move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). They also raise a standing challenge.

## II.     LAW AND ANALYSIS

### A.     Standing

Starting with standing, Rousseau and Valescu argue that the Plaintiffs do not have standing to bring their claims because they have not alleged some concrete, particularized, and actual injury in fact. They also argue that the Coalition, as an organization, has no standing.

A federal court "must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments" in each case. Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046,

2

1050 (8th Cir. 2006). "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (quoting United States v. Morton, 467 U.S. 822, 828 (1984)). Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction over a claim. Because the facts are essentially undisputed and the challenge is based on the complaint, the motion is a facial attack on jurisdiction. Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 637 (8th Cir. 2003).

To invoke subject matter jurisdiction in federal court, a plaintiff must have Article III standing. See Disability Support All. v. Heartwood Enterprises, LLC, 885 F.3d 543, 545 (8th Cir. 2018); Wolfe v. Gilmour Mfg. Co., 143 F.3d 1122, 1126 (8th Cir. 1998). "To establish Article III standing, plaintiffs must show (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury." Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021). An injury in fact is "the actual or imminent invasion of a concrete and particularized legal interest." Kuehl v. Sellner, 887 F.3d 845, 850 (8th Cir. 2018) (citations omitted).

As to injury-in-fact, a plaintiff must show "an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical." Sierra Club v. Robertson, 28 F.3d 753, 758 (8th Cir. 1994). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (internal citation and quotation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." Id. at 340. If a plaintiff lacks Article III standing, a federal court has no subject-matter jurisdiction over the claim, and the action must be dismissed. Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist., 813 F.3d 1124, 1128 (8th Cir. 2016).

3

Standing as to Doe and the IDC is resolved easily. Doe alleges she "experienced emotional, and mental and physical anguish, including chest pains." Doc. 1 at 6. She also alleges she incurred the costs of additional security measures, including installation of security cameras at her residence. Id. The IDC alleges that the vandalism caused a decrease in rental payments and required additional security needs. Id. These alleged injuries are concrete, particularized, and actual injuries sufficient to establish standing.

Standing as to the Coalition is a closer call. For its injury, the Coalition alleges it assisted with the vandalism cleanup, and participated in fundraising and generating support on behalf of the affected communities. Doc. 1 at 6-7. And because of those efforts, the Coalition claims it spent less time writing grant applications to further its mission. Doc. 1 at 7.

An organization may establish standing based on an injury to itself (as opposed to its members). To establish organizational standing, the organization must show "a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests." Nat'l Fed'n of Blind of Mo. v. Cross, 184 F.3d 973, 979 (8th Cir. 1999). "[T]he deflection of an organization's monetary and human resources" is enough to establish an injury. Ark. ACORN Fair Hous., Inc. v. Greystone Dev., Co., 160 F.3d 433, 434 (8th Cir. 1998). Here, while the allegations are sparse, the Coalition does allege it deflected monetary and human resources that drained some of its resources. That is enough to meet the threshold standing inquiry. See Huizenga v. Indep. Sch. Dist. No. 11, 44 F.4th 806, 811 (8th Cir. 2022) ("'The standing inquiry is merely a threshold inquiry'; it does not present the 'higher hurdles' of pleading a claim to relief on the merits under Federal Rule of Civil Procedure 12(b)(6)." (citation omitted)).

### B. Federal Rule of Civil Procedure 12(b)(6)

Rousseau and Valescu also move to dismiss the complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 8(a) requires a pleading to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." But a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570.

#### 1. 42 U.S.C. § 1981 Claim

Rousseau and Valescu assert the Plaintiffs' 42 U.S.C. § 1981 claim fails because they did not identify "any contracts under which they have rights which have been impaired due to the vandalism." Doc. 21 at 13. Under § 1981, all persons within the jurisdiction of the United States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b). The elements of a § 1981 claim include (1) membership in a protected

class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant. Gregory, 565 F.3d at 469.

Here, the factual allegations in support of the § 1981 claim are:

Defendant John Does 1-4 acted with discriminatory intent in targeting individual Plaintiffs, all of whom are members of a protected class. As a result of Defendants' actions targeting individual Plaintiffs, Defendants interfered with Plaintiffs' protected activity, including their right to make and enforce contracts.

Doc. 1 at 28. Reading the complaint in the light most favorable to the Plaintiffs, they have alleged sufficient facts as to each element of the § 1981 claim. And Rousseau and Valescu do not dispute that the Plaintiffs properly allege their protected class status and that the Defendants acted with discriminatory intent in vandalizing the Market. They do challenge the third element, and question whether the Plaintiffs properly allege that they were engaged in a protected activity. Rousseau and Valescu argue that the Plaintiffs have not identified any specific contracts that were interfered with as a result of the vandalism. To be sure, the factual allegations identifying contracts in the complaint are thin, but the Plaintiffs do allege some deprivation of financial benefit in rental and lending contracts. Doc. 1 ¶ 19. Whether the Plaintiffs will be able to identify any specific contracts that the Defendants interfered with to survive summary judgment is certainly an open question. But at this stage of the litigation, the focus is on plausibility and whether there are sufficient factual allegations to support the claim. That standard is met as to this claim—the complaint plausibly alleges a § 1981 claim, and the motion to dismiss that claim is denied.

### 2.     42 U.S.C. §§ 1985(3) and 1986 Claims

Rousseau and Valescu next challenge the Plaintiffs' 42 U.S.C. § 1985(3) claim. Section 1985(3) provides a civil remedy for private conspiracies to deprive others of legal rights. Griffin v. Breckenridge, 403 U.S. 88, 104 (1971). To state a § 1985(3) claim, the Plaintiffs must plausibly allege (1) a conspiracy of two or more persons; (2) for the purpose of depriving another of equal

protection or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation of a legal right. Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004). Importantly though, "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). "The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere." Scott, 463 U.S. at 833. Additionally, the federal substantive right (or predicate right) "found elsewhere" must be "guaranteed against private impairment." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 274 (1993).

The Plaintiffs allege the impaired federal substantive right is the right to enjoy a place of public accommodation—the Market—without fear or intimidation on account of race, religion, or nationality. Doc. 1 at 24-25, 32. Rousseau and Valescu argue that, under Bray, a private conspiracy claim under § 1985(3) must implicate interstate travel or the Thirteenth Amendment's prohibition on involuntary servitude. Doc. 21 at 17-18. But that is a limited reading of Bray. In Bray, the United States Supreme Court noted the right to interstate travel, as well as the right to be free from involuntary servitude, were examples of rights "protected against private, as well as official, encroachment." 506 U.S. at 278. It did not hold that those rights were the only rights capable of sustaining a § 1985(3) claim.

The case law confirms that § 1985(3) claims are not limited by the examples in Bray. Indeed, the United States Court of Appeals for the Tenth Circuit held that "a racially motivated conspiracy to interfere with one's enjoyment of a place of public accommodation" is a viable § 1985(3) claim. See Fisher v. Shamburg, 624 F.2d 156,162 (10th Cir. 1980). And a federal district court in Virginia came to the same conclusion in a separate case involving Patriot Front. Sealed Plaintiff v. Patriot Front, Case No. 3:22-cv-00670-MHL (E.D. Va. Mar. 31, 2024).

7

Accepting the factual allegations as true and reading the complaint in the light most favorable to the Plaintiffs, they have plausibly alleged a § 1985(3) claim. They allege a conspiracy among the Defendants to deprive the Plaintiffs of their civil rights, and they alleged acts in furtherance of the conspiracy, including the vandalism to the Market. They allege two predicate rights as the basis for the § 1985(3) claim—(1) the right to make and enforce contracts, and (2) the right to enjoy a public accommodation. Again, whether the Plaintiffs can ultimately prove their § 1985(3) claim is an open question to be resolved another day. At this point, they have plausibly alleged a § 1985(3) claim, and the motion to dismiss that claim is denied.[1]

The same analysis also applied to the Plaintiffs' 42 U.S.C. § 1986 claim. A cause of action under § 1986 depends on the existence of a claim under § 1985. Brandon v. Lotter, 157 F.3d 537, 539 (8th Cir. 1998). Rousseau and Valescu argue the § 1986 claim fails because § 1985(3) claim fails. But the § 1985(3) claim survives, and so does the § 1986 claim.

### 3. State Law Claims

With the federal claims resolved, what remains are the North Dakota state law claims for conversion, trespass, trespass to chattel, and civil conspiracy. Doc. 1 at 28-32. Rousseau and Valescu also move to dismiss these claims for failure to state a claim.

Under North Dakota law, conversion is "a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owners." Kluver v. SGJ Holdings, LLC, 988 N.W.2d 569, 576 (2023). Rousseau and Valescu specifically argue that the complaint fails to allege that either of them

---

[1] Rousseau and Valescu also raise a Counterman v. Colorado challenge to the § 1985(3) claim. 600 U.S. 66 (2023). They argue it adds a mens rea requirement to the claim. But it is unclear whether Counterman (a case that involved the constitutionality of a criminal statute) applies to a federal civil case. Even assuming it did apply, the existence of a mens rea is largely a factual dispute, making it inappropriate to resolve on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

committed the tortious act. Doc. 21 at 26. And their argument is correct—the complaint does not allege that Rousseau and/or Valescu engaged in a tortious detention, destruction, or control over the property at issue. So, conversion is not plausibly alleged as to Rousseau and Valescu, and the motion to dismiss the conversion claim is granted as to both of them.

The same analysis and result apply to the trespass to chattel claim. Trespass to chattel "requires dispossession of the property impairment of the condition, quality or value of the property, loss of use of the property, or other harm." Sagebrush Res., LLC v. Peterson, 2014 ND 3, ¶ 19, 841 N.W.2d 705, 712 (citing Restatement (2nd) of Torts § 218 (1965)). "One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if he dispossesses the other of the chattel." Restatement (Second) of Torts § 218 (1965) (cleaned up) (emphasis added). There is no allegation that Rousseau and Valescu are the individuals who "impaired" the condition of the property or dispossessed the property from its rightful owner. So, the motion to dismiss the trespass to chattel claim is granted.

Next, civil trespass is a common law tort in North Dakota. The North Dakota Supreme Court has defined trespass as "an intentional harm where a person intentionally and without a consensual or other privilege enters land in possession of another or any part thereof or causes a thing or third person so to do." Tibert v. Slominski, 2005 ND 34, ¶ 15, 692 N.W.2d 133, 137 (cleaned up). The complaint alleges that Rousseau and Valescu, through their leadership, coordination, and instruction, caused Patriot Front members to enter the IDC's property without consent, for the purpose of vandalizing the Market. Doc. 1 at 8-12, 30. That is sufficient to state a claim for civil trespass, and the motion to dismiss that claim is denied.

Finally, a note on the civil conspiracy claim. Civil conspiracy is:

> a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an

agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages.

Peterson v. North Dakota Univ. Sys., 2004 ND 82, ¶ 27, 678 N.W.2d 163. Rousseau and Valescu did not move to dismiss this claim, and there are sufficient facts in the complaint to support a plausible civil conspiracy claim. So, the claim will survive dismissal.

### III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons above, Rousseau's and Valescu's motion to dismiss (Doc. 18) is **GRANTED IN PART AND DENIED IN PART**. The conversion and trespass to chattels claims are **DISMISSED** as to Rousseau and Valescu. The Plaintiffs may proceed on all of the remaining claims.

**IT IS SO ORDERED**.

Dated this 9th day of September, 2024.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court