# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
### EASTERN DIVISION

|  |  |
|---|---|
| **NORTH DAKOTA HUMAN RIGHTS COALITION, IMMIGRANT DEVELOPMENT CENTER, and PLAINTIFF DOE,** | |
| Plaintiffs, | Case No. 3:23-cv-00160-PDW-ARS |
| v. | |
| **PATRIOT FRONT, THOMAS ROUSSEAU, TREVOR VALESCU, and JOHN DOES 1-10,** | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

    I.  PATRIOT FRONT...................................................................................................2

        A.  Patriot Front's Ideology .................................................................................2

        B.  Patriot Front Aims to Sow Fear Through "Activism." ...................................3

    II.  PATRIOT FRONT MEMBERS' VANDALISM OF THE INTERNATIONAL MARKET PLAZA ..................................................................................................4

    III. PATRIOT FRONT FAILED TO APPEAR IN THIS LITIGATION................................6

LEGAL STANDARD...............................................................................................................6

ARGUMENT ...........................................................................................................................6

    I.  PLAINTIFFS HAVE STATED A CLAIM UNDER 42 U.S.C. §§ 1981, 1985(3), AND 1986 AND NORTH DAKOTA STATE LAW. ........................................6

    II.  THE COURT SHOULD AWARD COMPENSATORY DAMAGES TO PLAINTIFFS. ....................................................................................................7

    III. PLAINTIFFS ARE ENTITLED TO A SIGNIFICANT PUNITIVE DAMAGES AWARD AGAINST PATRIOT FRONT. .......................................................8

    IV. PLAINTIFFS SEEK THEIR REASONABLE ATTORNEYS' FEES AND COSTS. .................................................................................................................11

CONCLUSION.......................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackra Direct Mktg. Corp. v. Fingerhut Corp.*,
    86 F.3d 852 (8th Cir. 1996) ...................................................................7

*Cutcliff v. Reuter*,
    791 F.3d 875 (8th Cir. 2015) .................................................................6

*Everyday Learning Corp. v. Larson*,
    242 F.3d 815 (8th Cir. 2001) .............................................................6, 7

*Gersh v. Anglin*,
    No. CV 17-50-M-DLC-JCL, 2019 WL 3754454 (D. Mont. July 15, 2019) .........................10

*Guzman v. W. State Bank of Devils Lake*,
    540 F.2d 948 (8th Cir. 1976) .................................................................9

*Keenan v. Aryan Nations*,
    No. CV 99-441 (Idaho 1st Dist. Sept. 8, 2000).......................................10

*Kuntz v. Partridge*,
    65 N.W.2d 681 (N.D. 1954) ...................................................................7

*Lynne v. Verner*,
    No. 3:23-CV-100, 2023 WL 11225943 (D.N.D. Dec. 29, 2023) ...........................11

*Macedonia Baptist Church* v. *Christian Knights of the Ku Klux Klan—Invisible Empire Inc.*,
    No. 96-CP-14-217 (S.C. Ct. Com. Pl. Jul. 24, 1998)................................10

*Metropolitan African Methodist Episcopal Church v. Proud Boys Int'l, L.L.C.*,
    No. 2021-CA-000004, 2023 WL 4680104 (D.C. Super. Ct. Jan. 1, 2023)..............10

*Murrell v. Patriot Front*,
    762 F. Supp. 3d 65 (D. Mass. 2025) .....................................................9

*Obeidallah v. Anglin*,
    No. 2:17-cv-720 (S.D. Ohio June 13, 2019) ...........................................10

*Peterson v. N. Dakota Univ. Sys.*,
    678 N.W.2d 163 ...................................................................................7

*Stoner v. Nash Finch, Inc.*,
    446 N.W.2d 747 (N.D. 1989) .................................................................9

*Wade v. Haynes*,
    663 F.2d 778 (8th Cir. 1981) ..................................................................8

*Wray v. Clarke*,
    151 F.3d 807 (8th Cir. 1998) ................................................................11

*Young v. Mt. Hawley Ins. Co.*,
    864 F.2d 81 (8th Cir. 1988) ....................................................................6

**Statutes**

28 U.S.C.
    § 1961 ..................................................................................................11

42 U.S.C.
    § 1985 ....................................................................................................7
    § 1988 ..................................................................................................11

N.D. Cent. Code § 32-03.2-11 ......................................................................8

**Other Authorities**

10A Charles A. Wright et al., Federal Practice & Procedure § 2688 (3d ed. 1998).......................6

Federal Rule of Civil Procedure
    Rule 41 ....................................................................................................6
    Rule 54 ..................................................................................................11
    Rule 55 ................................................................................................1, 6

## INTRODUCTION

Defendant Patriot Front ("Patriot Front") is an organized hate group founded in 2017. (Compl.[1] ¶ 21.)  Patriot Front trumpets deeply racist ideologies and publicly proclaims its mission to enforce America's "pan-European identity."  (*Id*.)  And Patriot Front members are not passive believers: the group's leaders require members to partake in "activism," which frequently takes the form of coordinated acts of racist vandalism.  (*Id*. ¶¶ 25, 27–28.)

Members of Patriot Front conspired to vandalize the International Market Plaza (the "Market"), which is owned by Plaintiff Immigrant Development Center (the "IDC").  (*Id*. ¶ 19.)  This large indoor market in Fargo provides community and shop space for immigrant businesspeople and other new Americans.  (*Id*.)  Patriot Front members carried out the conspiracy and spray-painted their logo and website, which contains vitriolic anti-immigrant propaganda, over a mural depicting portraits of Black women wearing hijabs.  (*Id*. ¶¶ 2, 10, 52.)  This hateful act instilled fear in Plaintiff Doe and the immigrant shopkeepers, leaving them in constant fear of being targets of further hate-based violence.  (*Id*. ¶¶ 8, 52.)

Plaintiffs North Dakota Human Rights Coalition, IDC, and Plaintiff Doe (collectively, "Plaintiffs") seek an entry of default judgment against Patriot Front on Plaintiffs' claims under 42 U.S.C. §§ 1981, 1985(3) and 1986 and North Dakota state law claims of trespass and civil conspiracy.  As outlined below, Plaintiffs have sufficiently established Defendant's liability under 42 U.S.C. §§ 1981, 1985(3) and 1986 and for trespass and civil conspiracy.  Indeed, this Court has already found that Plaintiffs have pleaded viable claims against other defendants.  (ECF No. 4.)  Because Patriot Front has failed to answer Plaintiffs' Complaint, Plaintiffs are entitled to default judgment on these claims pursuant to Federal Rule of Civil Procedure 55.  This Court should award Plaintiffs substantial compensatory and punitive damages, as well as attorney's fees.

---

[1] "Complaint" and "Compl." refer to the Complaint filed in this action on September 1, 2023.

## FACTUAL BACKGROUND

### I.    PATRIOT FRONT

Patriot Front is a splinter group originating from a neo-Nazi organization, and its stated ambition is the creation of a white ethnostate in the United States.  (Ex. A[2] ¶ 23.)  It is well-organized and follows a defined hierarchical structure.  (*Id.* ¶ 130; *see also* Compl. ¶ 31.)  Defendant Thomas Rousseau, the founder and National Director, oversees all of Patriot Front's activity across the country.  (Compl. ¶ 31.)  Patriot Front's geographical chapters, which it calls "networks," exist across the country, including Network 11, which is comprised of North Dakota, South Dakota, Iowa, Nebraska, and Minnesota.  (*See id.* ¶ 34.)  Achieving membership in Patriot Front is dependent on potential recruits' ability to meet various criteria, ranging from ancestral lineage and nationality to ideological beliefs and observed behavior.  (Ex. A ¶ 47.)  People of color are not permitted to be members.  (*Id.* ¶ 48.)

### A.    Patriot Front's Ideology

Patriot Front members believe that people of European descent are the only "true" Americans.  (Ex. B at 92:22–93:3; Ex. C at 55:22–56:11; Ex. D at 45:10–14; *see also* Ex. E at 37:22–47:6 ("[T]o be American is of that European diaspora . . . . And in order to be American, you have to be of that stock, of that blood."); Ex. F at 41:13–21 (testifying to belief that nonwhite people who are living in the United States are "here as guests" but are not "American").)  They believe that, in order to create a white ethnostate, nonwhite people in this country should be "sent back to the home [to] . . . wherever their stock is from."  (Ex. C at 57:18–58:17.)

For years, Patriot Front has deliberately and maliciously targeted minority communities using violence and white supremacist rhetoric.  Patriot Front's mission, which it proclaims publicly, "is a hard reset on the nation we see today– a return to the traditions and virtues of our [European] forefathers" who "left their European homes . . . [and who] found a common cause and

---

[2] References to "Ex." are to the exhibits to the Declaration of Timothy Q. Purdon filed concurrently herewith.

a common identity as Americans." (Compl. ¶ 4; Ex. G.) According to Patriot Front's manifesto, the only people who are Americans are those "of the founding stock of our [European] people," and who "share the common spirit that permeates throughout our [European] greater civilization, and the European diaspora." (Ex. G.) Patriot Front's manifesto espouses white nationalist rhetoric and advocates for "a generation of brave men to fearlessly rise to face all threats to their collective interests," in order to "urge our [European] people onward" as "the true inheritors of America." (Compl. ¶ 5; Ex. G.)

A video on the group's website explains Patriot Front's view of race: "the organization believes in the biological, sociological and institutional reality of racial characteristics and differences." (Ex. A ¶ 73). The video further inveighs that "the refusal to acknowledge racial realities or the deliberate undermining or disregard of the interests of European peoples is an evil and anti-American practice which [Patriot Front] stand[s] fanatically against." (*Id.*) It also states Patriot Front's racial position that "all Americans are descendants of the European race" and "foreign races have never successfully assimilated en masse into American culture and nationality. Instead what has been created is a diluted…culture." (*Id.*) White supremacy is at the core of Patriot Front's ideology.

**B.    Patriot Front Aims to Sow Fear Through "Activism."**

Patriot Front expects its members to engage in "activism" or risk expulsion. (*Id.* ¶ 53.) Members are required to purchase and publicly place a certain number of Patriot Front stickers and spray-painted stencils in order to remain members in good standing. (Compl. ¶ 27.) Patriot Front's stickers and logos contain fascist symbols and racist propaganda, including the slogans "Resurrection Through Insurrection," "Conquered Not Stolen," "American Spirit, European Blood," "For a New American Nation State," "Deport Invaders," "America for Americans," "Reclaim America," and "No Zionists in Government." (Ex. A ¶ 89.) Patriot Front directs its members to use the stickers and stencils to deface murals like the one at issue here. (*See id.* ¶ 90.) In a December 10, 2021 leaked message, Defendant Rousseau wrote: "So when it comes to large-scale mural cover ups, make sure that you are always consulting a Director for something like that,

3

or you are consulting me.  It is something, you know, generally as the activism is, becomes higher in risk or scale, the more you need to get consultation.  Things like billboards, big murals and stuff like that, you want to be careful, you want to run it by me." (*Id.* ¶¶ 51, 130.)

Since its formation in 2017, Patriot Front has a long history of violence. In fact, violence is celebrated by Patriot Front's online website, including phrases like "Embrace violence," "Become war," and "Train with your friends.  Fight with your enemies." (*Id.* ¶ 24.)  It is well known that Patriot Front members have defaced multiple murals honoring Black Americans, have targeted LGBTQ+ events, and destroyed property in an effort to promote their extreme and racist credo.  (Compl. ¶¶ 6, 11.)

The main goal of Patriot Front's activism relates to "sowing fear in immigrant communities." (Ex. A ¶ 39.)  The organization accomplishes this by targeting them with hateful propaganda.  Patriot Front particularly targets immigrants because they view immigrants as the main threat to Patriot Front's key goal: white domination of the United States. (*Id.*)  In a video on Patriot Front's website titled "What is Patriot Front's Goal," Defendant Rousseau says, "Mass immigration must be halted and reversed with equally massive repatriation efforts. . . foreign elements must be extracted from this country." (*Id.*)  As is typical of Patriot Front's anti-immigrant propaganda activity, in January 2026, the group posted banners reading "Deport Invaders" in Houston and Montrose, Texas. (*Id.*)  The bulk of the activities advertised on Patriot Front's website in January 2026 related to anti-immigrant themes. (*Id.*)

## II.    PATRIOT FRONT MEMBERS' VANDALISM OF THE INTERNATIONAL MARKET PLAZA

The undisputed facts show that on September 3, 2022, at Patriot Front's direction, individuals affiliated with Defendant Patriot Front intentionally trespassed onto the property of the International Market Plaza under the cover of darkness and without permission, where they graffitied the Market's front windows with spray paint using a Patriot Front stencil. (Compl. ¶ 39.) The Market is home to shops, restaurants, grocery stores, and an after-school program owned and operated by people of color and immigrants from African, Middle Eastern, and Latin American

nations. (*Id.* ¶ 1.) The attack on Plaintiff IDC's property was no accident; it was deliberate. When shopkeepers saw Patriot Front's graffiti at the Market, they became extremely concerned for their safety and the message the graffiti would send to customers due to their prior knowledge regarding Patriot Front's local activities, spreading white nationalist propaganda and targeting immigrant-owned restaurants. (*Id.* ¶ 3.)

Just two days following the initial attack, on September 5, 2022, Patriot Front escalated its attack against Plaintiffs. (*Id.* ¶ 9.) When shopkeepers arrived that morning to open their shops, they were again greeted with Patriot Front vandalism. This time, Patriot Front members destroyed artwork celebrating multiculturalism and diversity affixed to the Market's street-facing wall and converted that imagery to advertise a message of their own. (*Id.* ¶¶ 9, 41–46.) One of the murals Patriot Front destroyed included portraits of young Black women wearing hijabs. (*Id.* ¶ 10.) This level of personal attack was deeply alarming to many of the immigrant shopkeepers and owners and resulted in shopkeepers and customers substantially curtailing or eliminating their use of the Market. (*Id.* ¶ 11.) Plaintiff Doe and others in the Market community wondered whether the repeated acts of vandalism were precursors to a shooting, bombing, or some other kind of ethnically motivated mass violence. (*Id.* ¶ 49.)

What happened at the Market was not an isolated incident. Other businesses in the Fargo-Moorhead area have been similarly targeted and defaced with Patriot Front graffiti. These are businesses owned and operated by members of nonwhite, immigrant, and other marginalized communities, including a coffee shop and arts collective owned by LGBTQ+ people and people of color, as well as a restaurant owned by a Liberian individual. (*Id.* ¶ 13.) Instances of Patriot Front-related property destruction and intimidating leafletting have occurred elsewhere in the Fargo area, including the Ninth Street South pedestrian tunnel, the Fargo public school district office, and the Woodrow Wilson apartment complex. (*Id.* ¶¶ 13, 37.) Since its attacks on the Market, Patriot Front has, by its own admission, continued to be "active and organizing" in the state of North Dakota, and within the city of Fargo, as photographed on their website. (*Id.* ¶ 54.)

### III.    PATRIOT FRONT FAILED TO APPEAR IN THIS LITIGATION.

Plaintiffs filed this action on September 1, 2023.  (ECF No. 1.)  Plaintiffs served the Summons and Complaint on Patriot Front via the alternative means authorized by this Court.  (ECF Nos. 12, 68.)  Despite ample opportunity and notice, Patriot Front failed to enter an appearance or file a responsive pleading.  Accordingly, on April 11, 2025, default was entered against Defendant Patriot Front by the Clerk.  (ECF No. 68.)  Plaintiffs now bring this motion seeking default judgment against Defendant Patriot Front.

### LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a party to file a motion with the court for default judgment after default has been entered.  Once default has been entered on a claim for an indefinite or uncertain amount of damages, "facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding."  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001); *see also* 10A Charles A. Wright *et al.*, Federal Practice & Procedure § 2688 (3d ed. 1998).  A party in default is thus precluded from contesting the facts in the complaint that establish liability.  *Cutcliff v. Reuter*, 791 F.3d 875, 882 (8th Cir. 2015).  The court may, but is not required to, hold an evidentiary hearing to assess damages.  *Id.* at 883.  Documentary evidence in the form of affidavits and exhibits can suffice without a hearing when the amount of plaintiffs' damages is readily discernable on the basis of the undisputed evidence in the record.  *Id.*

### ARGUMENT

### I.    PLAINTIFFS HAVE STATED A CLAIM UNDER 42 U.S.C. §§ 1981, 1985(3), AND 1986 AND NORTH DAKOTA STATE LAW.

Default judgment against Patriot Front is appropriate because Patriot Front has failed to respond to the Complaint or otherwise appear in this litigation, thus conceding its liability.[3]

---

[3] While Plaintiffs also brought claims against John Does 1-10, the presence of Doe defendants does not prevent entry of final judgment.  *Young v. Mt. Hawley Ins. Co.,* 864 F.2d 81, 83 (8th Cir. 1988).  Nonetheless, should the Court deem it necessary, Plaintiffs are willing file a voluntary stipulation of dismissal without prejudice of their claims against the John Doe defendants pursuant to Rule 41(a)(1)(A)(i).

Taking together all of the Complaint's allegations and the evidence submitted in support of this Motion, Plaintiffs have established in detail that Patriot Front violated United States Code sections 1981, 1985(3), and 1986 and North Dakota state law prohibiting trespass and civil conspiracy. Indeed, this Court previously ruled in favor of Plaintiffs and found such claims were sufficiently pled as to the individual defendants.  (ECF No. 41); *see also Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) (affirming lower court's grant of default judgment "based on the pleadings, the motion for default judgment, and all evidence submitted in support of and in opposition to the motion").  Because liability is undisputed, all that remains for the Court to determine is the damages to which Plaintiffs are entitled because of Patriot Front's illegal and unconstitutional conduct.  *See Everyday Learning Corp.*, 242 F.3d at 818.

## II.     THE COURT SHOULD AWARD COMPENSATORY DAMAGES TO PLAINTIFFS.

A prevailing Section 1985 plaintiff is entitled to compensatory damages.  42 U.S.C. § 1985(3) ("The party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.").  So, too, is a plaintiff prevailing on North Dakota common law tort claims for trespass and civil conspiracy. *Kuntz v. Partridge*, 65 N.W.2d 681, 690 (N.D. 1954); *Peterson v. N. Dakota Univ. Sys.*, 678 N.W.2d 163, 174 (recognizing availability of damages for civil conspiracy claim).

Plaintiffs seek compensatory damages for two narrow categories of specific damages: (1) property damage inflicted on the Market's mural by Patriot Front and (2) the past and future cost of security cameras installed following the targeted attack.  These are costs Plaintiffs would not have incurred but for Patriot Front's reprehensible conduct.

First, Plaintiffs seek a judgment awarding them $45,000 in compensatory damages for the deliberate property damage Patriot Front committed against the Market's mural.  Plaintiff IDC commissioned the mural from local artists in 2017 with a $45,000 grant from ArtPlace America. (Ex. H.)  This award is necessary to compensate Plaintiff IDC for the destruction of the mural.

7

Second, Plaintiffs seek a judgment awarding them $24,664.37[4] for the past and future cost of security cameras and security services. Following the attacks on the Market, Plaintiffs IDC and Doe feared greatly not only for their property, but also for the safety of the Market's customers and shopkeepers. In an effort to protect themselves against Patriot Front's continued attacks, Plaintiffs arranged for volunteer security at the Market location from September 2022 to December 2023. Plaintiff Doe installed security cameras at Plaintiff Doe's residence in November 2023, and Plaintiff IDC installed security cameras at the Market in December 2023. Plaintiffs IDC and Doe paid for a monthly service to operate the security cameras both at the Market and at Plaintiff Doe's personal residence. (Ex. C.) Plaintiffs respectfully ask this Court to issue a judgment imposing compensatory damages related to the monthly costs associated with the security cameras for the time period of January 2022 to October 2028 for Plaintiff Doe's residence and December 2023 to October 2028 for the Market. These damages are necessary because, absent an award covering these costs, Plaintiffs will continue to bear the financial burden of security measures caused solely due to Patriot Front's conduct and the ongoing risk of future attacks.

## III. PLAINTIFFS ARE ENTITLED TO A SIGNIFICANT PUNITIVE DAMAGES AWARD AGAINST PATRIOT FRONT.

In addition to compensatory damages, both federal and state law support an award of punitive damages here. *Wade v. Haynes*, 663 F.2d 778, 785 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30 (1983) ("[T]his court held that punitive damages may "be awarded in civil rights actions where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct or a reckless disregard for the rights of the plaintiff."); N.D. Cent. Code § 32-03.2-11 (permitting plaintiffs to recover punitive damages for tort-based actions including civil conspiracy, trespass, trespass to chattel, and conversion, provided they satisfy the statutory requirements). The "purpose of awarding punitive damages is to punish the wrongdoing defendant in order to deter

---

[4] This figure is the total monthly cost of security at the International Market Plaza ($290 per month for seventy months, from December 2023 to October 2028) plus the total monthly cost of security at Plaintiff Doe's home ($61.47 per month for seventy-one months, from November 2023 to October 2028).

him, and others, from repetition of the wrongful conduct." *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 754 (N.D. 1989). Because of Patriot Front's unforgivable and reprehensible conduct and in order to prevent further such conduct, Plaintiffs seek a punitive damages award of $2,000,000 against Patriot Front.

Punitive damages may be "awarded in civil rights actions where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff." *Guzman v. W. State Bank of Devils Lake*, 540 F.2d 948, 953 (8th Cir. 1976). Malice is clearly established for Patriot Front because, as explained above, Patriot Front is a white supremacist organization advocating for a white ethnostate at the expense of any minority—and taking action to advance that advocacy. Patriot Front requires its members to engage in "activism" that is intentionally designed to spread Patriot Front's racist and hateful message and to threaten and intimidate. These activities, if not outright intentionally, at least recklessly and indifferently, deprive individuals of their civil rights by implicitly threatening violence and thereby preventing people from enjoying equal access to public accommodations.

Not only is Patriot Front's intentional conduct punishable on its own, Patriot Front has demonstrated absolutely no remorse for their illegal conduct. Rather, Patriot Front continues to double down on its vitriol. As the Complaint demonstrates, in the year after the attacks on the Market, Patriot Front continued to be "active and organizing" in the state of North Dakota and the city of Fargo, as their website reflects. (Compl. ¶ 54.) In 2023, Patriot Front remained the top group responsible for white supremacy propaganda incidents, as reported by the Anti-Defamation League. (Ex. A ¶ 55.) As recently as January 2026, Patriot Front has continued its rhetoric of hate against immigrant communities by dropping banners in Houston and Montrose, Texas reading "Deport Invaders" and posting anti-immigrant content on its website. (*Id.* ¶ 39.)

Significant punitive damages awards have been awarded against Patriot Front and other white supremacist groups in other similar circumstances. For example, in *Murrell v. Patriot Front*, the plaintiff alleged he was physically attacked by Patriot Front members during a demonstration held by the group. 762 F. Supp. 3d 65, 70 (D. Mass. 2025). On plaintiff's motion for default

judgment, the court awarded compensatory damages under Section 1985(3) consisting of $25,000 for physical injuries, $500,000 for psychological injuries and emotional distress, and $230,000 in lost wages, and also awarded punitive damages of $2,000,000. *Id.* at 85.

Another similar example, *Metropolitan African Methodist Episcopal Church v. Proud Boys Int'l, L.L.C.*, involved vandalism of a prominent, historically Black church in Washington, D.C., by members of the Proud Boys—another white supremacist group—who ripped down and destroyed Black Lives Matter signs from the church while making racist comments. No. 2021-CA-000004, 2023 WL 4680104, at *7 (D.C. Super. Ct. Jan. 1, 2023). The court awarded the church $36,626.78 in compensatory damages and $1,000,000 in punitive damages under Section 1985(3) on plaintiff's motion for default judgment. *Id.* at *10–16.

Plaintiffs in other civil rights cases have also been awarded significant compensatory and punitive damages against white supremacist organizations for causing emotional distress through their activities. *See, e.g.*, *Gersh v. Anglin*, No. CV 17-50-M-DLC-JCL, 2019 WL 3754454, at *2 (D. Mont. July 15, 2019) (awarding $4.04 million in compensatory damages and $10 million in punitive damages), *R&R adopted*, No. CV 17-50-M-DLC-JCL, 2019 WL 3755265 (D. Mont. Aug. 8, 2019); Order, *Obeidallah v. Anglin*, No. 2:17-cv-720 (S.D. Ohio June 13, 2019) (awarding $820,000 in compensatory damages and $3.28 million in punitive damages); Am. Judgment, *Keenan v. Aryan Nations*, No. CV 99-441 (Idaho 1st Dist. Sept. 8, 2000) (awarding $330,000 in compensatory damages and $6 million in punitive damages); Judgment, *Macedonia Baptist Church* v. *Christian Knights of the Ku Klux Klan—Invisible Empire Inc.*, No. 96-CP-14-217 (S.C. Ct. Com. Pl. Jul. 24, 1998) (awarding $300,000 in compensatory and $37.5 million in punitive damages, which were later reduced to $21.5 million).

An award of significant punitive damages is similarly justified here. Imposing punitive damages on Patriot Front is critical to confirming that the rule of law does not permit or tolerate racially motivated violence and in deterring such violence in the future. Absent such an award for punitive damages, members of Patriot Front will be emboldened to carry out their racially

motivated agenda, as they have continued to do even since this lawsuit has been filed.  (*See, e.g.*, Ex. A ¶ 39.)

Moreover, if ever a case for deterrence was necessary, it is this one.  Deterrence via a punitive damages award is necessary to send a clear message to other such groups or individuals who may consider similar attacks against minorities and immigrants in this community and nationwide, especially in light of the growing attacks on these communities.  Plaintiffs respectfully request this Court to send a direct message that any such conduct cannot happen again and impose a $2,000,000 punitive damages award against Patriot Front.[5]

## IV.    PLAINTIFFS SEEK THEIR REASONABLE ATTORNEYS' FEES AND COSTS.

Finally, 42 U.S.C. § 1988(b) authorizes "the court, in its discretion," to "allow the prevailing party . . . a reasonable attorney's fee" for violations of Sections 1985 and 1986.  Where a party prevails in a civil rights action, attorneys' fees are generally granted unless such an outcome would be unjust.  *Wray v. Clarke*, 151 F.3d 807, 809 (8th Cir. 1998).

Plaintiffs request leave to file a separate motion for attorneys' fees and costs following any Order granting this Motion.  *See* Fed. R. Civ. P. 54(d)(2) (requiring attorney's fees motion after entry of judgment); *Lynne v. Verner*, No. 3:23-CV-100, 2023 WL 11225943, at *1 (D.N.D. Dec. 29, 2023) (ruling on and granting attorney's fees motion filed after default judgment entry).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court grant this Motion for Default Judgment and award Plaintiffs their compensatory and punitive damages.  This Court should further enter an order directing Plaintiffs to submit a motion for attorneys' fees and costs with appropriate documentation following an Order on this Motion.

---

[5] In addition to compensatory and punitive damages, Plaintiffs should be awarded post-judgment interest.  Per 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in district court."

Dated this February 13, 2026

By:    _/s/ Christine Y. Wong_

Christine Y. Wong (CA Bar No. 284026)
William Frentzen (CA Bar No. 343918)
Christina E. Dierolf (CA Bar No. 335258)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
christinewong@mofo.com
wfrentzen@mofo.com
cdierolf@mofo.com

Anisa Sirur (CA Bar No. 315771)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
asirur@lawyerscommittee.org

Timothy Q. Purdon (ND Bar No. 05392)
ROBINS KAPLAN LLP
1207 West Divide Avenue, Suite 200
Bismarck, ND 58501
Telephone: (701) 255-3000
Facsimile: (612) 349-8767
tpurdon@robinskaplan.com

*Attorneys for Plaintiffs*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2026, I caused a copy of the above document to be electronically filed using the CM/ECF system.


_/s/ Christine Y. Wong_
Christine Y. Wong